BUCHALTER
A Professional Corporation
LEAH C. LIVELY (SBN: 197636)
ALEXANDRA B. PAKZAD (SBN: 317054)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400
Email:  llively@buchalter.com
        apakzad@buchalter.com

Attorneys for Plaintiff
MISTI CASSAR

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTI CASSAR, an individual,<br><br>             Plaintiff,<br><br>      vs.<br><br>LAINA SUMMERS, an individual, BAYVIEW SHOWJUMPING, LLC, a Washington Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>             Defendants. | Case No. 2:23-cv-10228<br><br>Assigned to Honorable<br><br>**COMPLAINT FOR:**<br><br>**(1)  BREACH OF ORAL CONTRACT;**<br>**(2)  BREACH OF WRITTEN CONTRACT;**<br>**(3)  FRAUDULENT MISREPRESENTATION;**<br>**(4)  FRAUDULENT INDUCEMENT;**<br>**(5)  UNJUST ENRICHMENT;**<br>**(6)  PROMISSORY ESTOPPEL; AND**<br>**(7)  CONVERSION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Misti Cassar ("Plaintiff" of "Cassar"), by and through its attorneys, brings this action against Defendants Laina Summers ("Summers") and Bayview Showjumping, LLC ("Bayview") (collectively "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.     This case arises from Plaintiff's sale of a show jumping horse to Defendants for use in horse competitions. After negotiating the terms of the sale, and receiving a written bill of sale from Plaintiff that memorialized their agreement, Defendants unilaterally and with intent to deceive Plaintiff, willfully altered the terms of the bill of sale in a manner inconsistent with the agreed upon terms and designed to benefit Defendants and harm Plaintiff, and signed and returned the altered contract to Plaintiff without identifying the alterations. Then, after Defendants took possession of the horse, competed it at multiple horse shows, listed the horse as being owned by Defendant Summers, and made two payments under the contract, Defendants thereafter failed to make the final installment payment, in breach of the bill of sale, and despite multiple demands by Plaintiff to do so.  Accordingly, Plaintiff seeks relief for the damages she has sustained as a result of Defendants Summers, Bayview, and DOES 1-10's failure to make the final installment payment in the amount of ninety thousand dollars ($90,000), plus interest.

## THE PARTIES

2.     Plaintiff Misti Cassar is, and was at all relevant times within the Complaint, a resident of Santa Clarita, Los Angeles County, California.

3.     Plaintiff is informed and believes and on that basis alleges that Defendant Laina Summers is, and was at all relevant times within the Complaint, an individual who resides in King County, Washington. Defendant Summers holds herself out as a professional in the sport horse industry and is an individual involved in the equestrian sport horse industry through buying, selling, and leasing horses, and

an individual employing agent(s) involved in the equestrian sport horse industry through buying, selling, and leasing horses.

4.     Plaintiff is informed and believes and on that basis alleges that Defendant Bayview Showjumping, LLC is, and was at all relevant times within the Complaint, a limited liability company organized and existing under the laws of the State of Washington, with its principal place of business located at Kirkland, Washington. Defendant Bayview is in the equestrian sport horse industry through buying, selling, and leasing horses, and through employing agent(s) involved in the equestrian sport horse industry through buying, selling, and leasing horses.

5.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of Does 1 through 10, inclusive, if and when they are ascertained.  Plaintiff is informed and believes and thereon allege that each of the fictitiously named Defendants participated in some or all of the conduct alleged herein, and that the damages alleged herein that have been suffered by Plaintiff was proximately caused or contributed to by these Defendants.

6.     At all times herein mentioned, each of the Defendants named in the caption of this Complaint, was and is the agent, servant and employee of each of the other Defendants, and all of the things alleged to have been done by said Defendants were done in the capacity of and as agent of the other Defendants.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of California and citizens of Washington, and the amount in controversy exceeds $75,000, exclusive of interest and costs. For purposes of diversity, a corporation is deemed a citizen of: (1) the state

under whose laws it is organized; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this claim occurred in this jurisdictional district, to wit: the contract at issue was entered into in this district.

9.     Venue is proper in this district under 28 U.S.C. § 1391(b)(3), in that Defendant is subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## FACTUAL BACKGROUND

### *Plaintiff is a Highly Skilled Equestrian Professional*

10.     Plaintiff is an experienced and successful professional horse rider and trainer in the discipline of show jumping.  Plaintiff has represented the United States in international competition, has won numerous prestigious Grand Prix competitions, and has bought and sold many sport horses throughout her decades long career.

### *Defendant Summers is a Professional in the Equestrian Industry and the Owner of Bayview*

11.     Defendant Summers is a professional horse rider and trainer who regularly participates in show jumping competitions throughout the west coast. Defendant Summers is currently registered with the United States Equestrian Foundation ("USEF"), the national equestrian federation responsible for the registration of horses and riders participating in recognized USEF competitions, as a "professional," bearing the USEF Number 274746.

12.     Plaintiff is informed and believes and on that basis alleges that Defendant Bayview is located in the Seattle area and is boutique equestrian program that focuses on the buying and selling of sport horses, the development of hunter and jumper sport horses, and the development of riders for the highest levels of competition.

***The Horse Show at Desert International Horse Park in Thermal, California***

13.     Every year from January through March, the Desert International Horse Park hosts an international horse show competition in Thermal, California (the "Desert Circuit"). Each year, people travel from all over the world with their horses to compete at the highest level of equestrian sport. During these three months in Thermal, many horses are campaigned for sale and lease. Thousands of horse sale, purchase, and lease transactions take place during the Desert Circuit.

14.     In 2022, Desert Circuit ran from the middle of January 2022 through the middle of March 2022. Specifically, Desert Circuit ran the following weeks: DC I: January 19- 23, 2022; DC II: January 26-30, 2022; DC III: February 2-6, 2022; DC IV: February 9-13, 2022; DC V: February 23-27, 2022; DC VI: March 2-6, 2022; DC VII: March 9-13, 2022; DC VIII: March 16-20, 2022.

15.     In or about mid-January 2022, Plaintiff traveled to the Thermal, California to attend the Desert Circuit with a number of horses including a horse known as Cartouche 93, a 2011 Holsteiner gelding with the USEF registration number 5785757 and FEI identification number 106HO24 ("Cartouche").

16.     Plaintiff is informed and believes and on that basis alleges that Defendants attended Desert Circuit Week I through Week IV – approximately January 19, 2022 through February 13, 2022.

***Plaintiff and Defendant Summers Enter Into a Purchase Agreement in Thermal, California***

17.     In or around late 2021 Plaintiff purchased and imported Cartouche from Europe with the intention to sell Cartouche while at the Desert Circuit, as part of her import and sales business.

18.     While attending the Desert Circuit, Defendant Summers reached out to Plaintiff expressing Defendant Summers' need for a top level show jumping horse.

19.     Plaintiff and Defendant Summers discussed various options and Plaintiff mentioned that Cartouche was for sale.

20.    In or about mid-January 2022, Defendant Summers test rode Cartouche at Desert International Horse Park to determine if Cartouche was a good match. The test ride was successful and Defendant Summers expressed to Plaintiff that she wanted to buy Cartouche.

21.    In or about mid-January 2022, and after Defendant Summers' test ride of Cartouche, Plaintiff and Defendant Summers reached an oral purchase agreement and mutual understanding that Defendants would purchase Cartouche from Plaintiff for the sum of two hundred thousand dollars ($200,000.00).

22.    The Parties further agreed that the two hundred thousand dollar ($200,000.00) purchase price would be payable to Plaintiff in installments, due in full within sixty (60) days of the purchase agreement.

23.    The Parties further agreed that Defendants would pay the premium on Cartouche's two hundred thousand dollar ($200,000.00) mortality insurance policy, naming Plaintiff as the loss payee, until Cartouche was paid for in full.

24.    In or around mid-January 2022, Defendants took possession of Cartouche.

25.    Plaintiff is informed and believes and on that basis alleges that Defendants took Cartouche back to King County, Washington on around approximately February 13, 2022.

***Plaintiff Allows Defendants to Campaign Another Horse to Earn a Commission to Apply Toward the Outstanding Purchase Price of Cartouche***

26.    Plaintiff was at all relevant times, the owner of another horse known as Benco de Mesnildot, a 2011 Selle Francais gelding with the USEF registration number 5821906 and FEI identification number 106FT96 ("Benco").

27.    In March 2022, in an effort to help facilitate Defendants' timely payment of Cartouche's purchase price, Plaintiff agreed to provide Defendants the opportunity to campaign and sell Benco on behalf of Plaintiff, and to apply fifty thousand dollars ($50,000.00) from Benco's sale towards the purchase price of

Cartouche, should Defendants be able to find a suitable buyer within a reasonable time.

28.    By allowing Defendants to take Benco into their possession in an attempt to sell him, Plaintiff was giving Defendants an opportunity to earn a commission from the sale of Benco that could then be applied toward the outstanding purchase price of Cartouche.

29.    It was always agreed to and understood that Defendants took on all risk related to the campaigning and sale of Benco and in the event Defendants were unable to sell Benco, then Defendants would not earn said commission to apply toward the outstanding purchase price of Cartouche, and would be responsible for paying the remaining sales price of Cartouche from other funds/sources.

***Defendants Fail to Make Additional Payments and Plaintiff Sends Defendant a Bill of Sale***

30.    By mid-February 2022 Defendants had yet to make any payments toward the purchase of Cartouche despite reaching an oral purchase agreement almost a month prior.

31.    Due to Defendants' failure to make a payment by mid-February, Plaintiff sent Defendant Summers a Bill of Sale via DocuSign on or about February 13, 2022. A true and correct copy of the original bill of sale is attached hereto as **Exhibit 1**.

32.    The Bill of Sale accurately reflected the oral purchase agreement and the terms of the oral agreement that the Parties had entered into in or about early mid-January 2022.

33.    After Plaintiff sent the bill of sale via DocuSign reflecting the terms of the oral purchase agreement, Defendant Summers, without notifying Plaintiff, made a number of material and self-serving changes to the bill of sale, and returned a signed copy of the altered bill of sale to Plaintiff via DocuSign. Plaintiff never counter signed the altered bill of sale. As a result of Plaintiff not executing the bill of sale,

the document was eventually marked as VOID by the document signing service. A true and correct copy of the altered bill of sale is attached hereto as **Exhibit 2**.

### *Defendant Summers Made the First Installment Payment*

34.     On or around February 2022, Defendants made a payment of fifty thousand dollars ($50,000.00) towards Cartouche's purchase price, as agreed, and shortly thereafter Defendant Summers registered herself as the owner of Cartouche with the USEF.

35.     The two remaining payments totaling one hundred and fifty thousand dollars ($150,000.00) were due on or before April 14, 2022.

### *Plaintiff Sends Benco to Washington but Defendants Are Unable to Find a Buyer for Benco*

36.     On or about March 2022, Plaintiff paid several thousand dollars to transport Benco from Los Angeles to Defendants' stable in Washington State to give Defendants the opportunity to market Benco for sale and to secure a buyer.

37.     Defendants were unsuccessful in finding a buyer for Benco, and after five months, Plaintiff re-took possession of Benco in or around August 2022. Plaintiff also paid several thousand dollars to transport Benco back to Plaintiff's stable. Plaintiff then campaigned Benco and eventually sold Benco without any assistance from Defendants.

### *Defendant Summers Made a Second Installment Payment*

38.     In or around late March 2022, Plaintiff contacted Defendants asking for the status of the outstanding funds for the purchase of Cartouche.

39.     From late March 2022 to September 2022, Plaintiff engaged in numerous correspondence with Defendants asking for an update as to the outstanding funds for the purchase of Cartouche.

40.     Finally, in or around September 2022, Defendant Summers made a second payment toward the purchase price of Cartouche in the amount of sixty

**COMPLAINT FOR DAMAGES**

BUCHALTER
A PROFESSIONAL CORPORATION
PORTLAND

thousand dollars ($60,000.00), leaving an outstanding balance in the amount of ninety thousand dollars ($90,000.00).

41.    Defendant Summers competed Cartouche, listing herself as the owner, multiple USEF rated horse shows from Vancouver B.C., to Thermal, CA, beginning in June 2022.

**Defendant Summers Failed to Make the Third and Final Installment Payment**

42.    Since September 2022, Plaintiff has contacted Defendants a number of times requesting the outstanding balance in the amount of ninety thousand dollars ($90,000.00). Defendants have ignored these requests.

43.    Since September 2022, Defendants have failed to make the third and final payment of ninety thousand dollars ($90,000.00) in breach of the purchase agreement.

44.    Defendants continue to ignore repeated requests for the payment of the outstanding funds.

45.    Defendants have had possession and use of Cartouche since in or around January 2023. The remaining one hundred and fifty thousand dollar ($150,000) payment was due by no later than April 14, 2022. Accordingly, by April 14, 2022, one hundred and fifty thousand dollars ($150,000) was outstanding and due to Plaintiff. Accordingly, from April 15, 2022 through the filing of this Complaint, Defendants have enjoyed the possession and use of Cartouche without having to pay any amounts toward the outstanding amount due for the possession and use of Cartouche.

**Defendant Summers Stopped Making Payments on Cartouche's Mortality Policy in Breach of the Purchase Agreement**

46.    On July 10, 2023, Plaintiff received a letter from Berkley Equine & Cattle regarding the insurance policy for Cartouche. Per the letter, Berkley Equine & Cattle gave Plaintiff "written notice of cancellation of Policy Number QAM

4424303-12 for nonpayment of premium." Further, per the letter, Plaintiff was being "notified in accordance with the terms and conditions of the policy and in accordance with either state or federal law, that [the] policy [would] cancel on 08/22/2023, at 12:01 A.M. Standard Time." A true and correct copy of the letter from Berkley Equine & Cattle is attached hereto as **Exhibit 3**.

47. Per the purchase agreement, Defendants were contractually obligated to pay the premium on Cartouche's two hundred thousand dollar ($200,000.00) mortality insurance policy, naming Plaintiff as the loss payee, until Cartouche was paid for in full.

48. Plaintiff is informed and believes and on that basis alleges that Defendants failed to pay Cartouche's mortality policy naming Plaintiff as the loss payee, as was required by their contract, and therefore the insurance company cancelled the policy.

## <u>FIRST CAUSE OF ACTION</u>
## (BREACH OF ORAL CONTRACT)
### *Against all Defendants*

49. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 48 inclusive, as though fully set forth herein.

50. In or about early February 2022, Plaintiff entered into a valid purchase agreement orally with Defendants for the purchase of Cartouche for the sum of two hundred thousand dollar ($200,000.00). The Parties further agreed that the two hundred thousand dollar ($200,000.00) purchase price would be payable in installments, due in full within sixty (60) days of the purchase agreement. The Parties further agreed that Defendants would pay the premium on Cartouche's two hundred thousand dollar ($200,000.00) mortality insurance policy, naming Plaintiff as the loss payee, until Cartouche was paid for in full. The Parties further agreed that Defendants would be given the opportunity to campaign and sell Benco on behalf of Plaintiff, and to apply a fifty thousand dollars ($50,000.00) commission from the sale of Benco

towards the purchase price of Cartouche, should Defendants be able to find a suitable buyer within a reasonable time.

51.    Plaintiff did all, or substantially all, of the things that the purchase agreement required of her including transferring possession of Cartouche to Defendants.

52.    Defendants were not excused from performing under the terms of the purchase agreement for any reason.

53.    Defendants breached the purchase agreement by failing to make the final payment of ninety thousand dollars ($90,000.00) in breach of the purchase agreement.

54.    Defendants also breached the purchase agreement by failing to pay the two hundred thousand dollar ($200,000.00) mortality insurance policy premium until Cartouche was paid for in full with Plaintiff named as the loss payee.

## SECOND CAUSE OF ACTION

### (BEACH OF WRITTEN CONTRACT)

#### *Against all Defendants*

55.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 48 inclusive, as though fully set forth herein.

56.    Plaintiff alleges in the alternative to her oral breach of contract claim that Plaintiff is entitled to recover under a written breach of contract claim if it is determined that either a valid and enforceable oral contract does not exist, the existing oral contract does not cover the subject matter of the dispute between Plaintiff and Defendants, or the existing oral contract is void, invalid, or unenforceable.

57.    On February 13, 2022, Plaintiff entered into a valid, enforceable, and binding written purchase agreement with Defendants for the purchase of Cartouche for the sum of two hundred thousand dollars ($200,000). The Parties further agreed that the two hundred thousand dollar ($200,000.00) purchase price would be payable in installments, due in full within sixty (60) days of the purchase agreement. The

BUCHALTER
A PROFESSIONAL CORPORATION
PORTLAND

Parties further agreed that Defendants would pay the premium on Cartouche's two hundred thousand dollar ($200,000.00) mortality insurance policy, naming Plaintiff as the loss payee, until Cartouche was paid for in full. The Parties further agreed that Defendants would be given the opportunity to campaign and sell Benco on behalf of Plaintiff, and to apply a fifty thousand dollars ($50,000.00) commission from the sale of Benco towards the purchase price of Cartouche, should Defendants be able to find a suitable buyer within a reasonable time.

58.    Plaintiff did all, or substantially all, of the things that the purchase agreement required of her including transferring possession of Cartouche to Defendants.

59.    Defendants were not excused from performing under the terms of the purchase agreement for any reason.

60.    Defendants failed to make the final payment of ninety thousand dollars ($90,000.00) in breach of the purchase agreement.

61.    Defendants also breached the purchase agreement by failing to pay the two hundred thousand dollar ($200,000.00) mortality insurance policy premium until Cartouche was paid for in full with Plaintiff named as the loss payee.

## **THIRD CAUSE OF ACTION**
## **(FRAUDULENT MISREPRESENTATION)**
### ***Against all Defendants***

62.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 48 inclusive, as though fully set forth herein.

63.    Prior to entering into the purchase agreement, Plaintiff met with Defendants who represented that they were in the market for a top jumping horse and had the funds available to pay for said jumping horse.

64.    Plaintiff is informed and believes and on that basis alleges that Defendants represented the above referenced facts as true to Plaintiff when they knew, or should have known, they were false.

65. Plaintiff is informed and believes and on that basis alleges that the representations made by Defendants were fraudulent misrepresentations designed to lure Plaintiff into entering into the purchase agreement with Defendants so that Defendants could take possession of a top jumping horse for their own financial benefit.

66. Plaintiff reasonably, justifiably and detrimentally relied on the representations made by Defendants as enumerated above because they held themselves out as a professional looking for a top jumping horse and had the funds available to pay for said jumping, and conveyed the information in a believable and reliable manner as previously described herein.

67. However, when Plaintiff sent the Bill of Sale to Defendants, Defendant Summers altered the Bill of Sale by making a number of material and self-serving changes to the Bill of Sale, and returned a signed copy of the altered bill of sale to Plaintiff. This directly contradicted the Parties' oral purchase agreement.

68. As a result of Defendants' fraudulent misrepresentations, Plaintiff financially suffered in an amount to be proven at trial.

69. In deciding to enter into the purchase agreement with Defendants, Plaintiff accepted as true the totality of the representations made by Defendants.

70. Had Plaintiff known that the representations made by Defendants were inaccurate, false and misleading; Plaintiff would not have entered into business with Defendants.

## **FOURTH CAUSE OF ACTION**
### **(FRAUDULENT INDUCEMENT)**
#### *Against all Defendants*

71. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 48 inclusive, as though fully set forth herein.

72.     Prior to entering into the purchase agreement, Plaintiff met with Defendants who represented that they were in the market for a top jumping horse and had the funds available to pay for said jumping horse.

73.     Plaintiff is informed and believes and on that basis alleges that Defendants represented the above referenced facts as true to Plaintiff when they knew, or should have known, they were false.

74.     Plaintiff is informed and believes and on that basis alleges that the representations made by Defendants were fraudulent misrepresentations designed to induce Plaintiff into entering into the purchase agreement with Defendants so that Defendants could take possession of a top jumping horse for their own financial benefit.

75.     Plaintiff reasonably, justifiably and detrimentally relied on the representations made by Defendants as enumerated above because they held themselves out as a professional looking for a top jumping horse and had the funds available to pay for said jumping, and conveyed the information in a believable and reliable manner as previously described herein.

76.     However, when Plaintiff sent the Bill of Sale to Defendants, Defendant Summers altered the Bill of Sale by making a number of material and self-serving changes to the Bill of Sale, and returned a signed copy of the altered bill of sale to Plaintiff. This directly contradicted the Parties' oral purchase agreement.

77.     As a result of Defendants' fraudulent misrepresentations, Plaintiff financially suffered in an amount to be proven at trial.

78.     In deciding to enter into the purchase agreement with Defendants, Plaintiff accepted as true the totality of the representations made by Defendants.

79.     Had Plaintiff known that the representations made by Defendants were inaccurate, false and misleading and designed to induce Plaintiffs into entering and maintaining business with Defendants; Plaintiff would not have entered into business with Defendants.

# FIFTH CAUSE OF ACTION

## (UNJUST ENRICHMENT)

### *Against all Defendants*

80.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 48 inclusive, as though fully set forth herein.

81.    Plaintiff and Defendants entered into the purchase agreement as set forth above.  Pursuant to the terms of the purchase agreement, Plaintiff has performed or has been excused from performing all conditions and covenants required of Plaintiff under the purchase agreement.

82.    Defendants have been unjust enriched in two ways (1) an interest free loan from the date of purchase of Cartouche, and (2) use of Cartouche during the time period Defendants have failed to pay the outstanding amount due under the purchase agreement.

83.    Defendants have had possession and use of Cartouche since in or around February 2022.

84.    On February 13, 2022, Defendants made a fifty thousand dollar ($50,000) payment toward the purchase price of Cartouche per the purchase agreement. The remaining one hundred and fifty thousand dollar ($150,000) payment was due by no later than April 14, 2022. Accordingly, by April 14, 2022, one hundred and fifty thousand dollars ($150,000) was outstanding and due to Plaintiff. Defendants did not make the one hundred and fifty thousand dollar ($150,000) payment due per the purchase agreement. Accordingly, from April 15, 2022 through September 2022, Defendants owed one hundred and fifty thousand dollars ($150,000) toward the purchase price of Cartouche per the purchase agreement. In September 2022, Defendants made a sixty thousand dollar ($60,000) payment toward the purchase price of Cartouche.  Accordingly, from September 2022 through the filing of this Complaint, Defendants have owed Plaintiff ninety thousand dollars ($90,000) toward the purchase price of Cartouche.

85.     Defendants have enjoyed the possession and use of Cartouche without paying the outstanding amount due.

86.     Defendants were conferred a substantial benefit by (1) getting an interest free payment plan for Cartouche for 60 days but also due to Defendants delayed payment, and (2) now failure to pay the remaining amount due under the purchase agreement for the possession and use of a top jumping horse.  While Defendants have maintained possession of Cartouche, Defendants were delayed in the second installment payment and have failed to make the final payment.

87.     It is and will be unjust and inequitable for Defendants to retain the possession and use of Cartouche from Plaintiff without being required to pay Plaintiff the full amount owed under the terms of the purchase agreement.

88.     Further, it is and will be unjust and inequitable for Defendants to retain the possession and use of Cartouche without paying the amount outstanding.

89.     As a direct result of Defendants' conduct and affirmative acts as alleged herein in relation to the failure to pay the amount outstanding under the purchase agreement, Defendants have been unjustly enriched in an amount in excess of ninety thousand dollars ($90,000) and Plaintiff has suffered and continues to suffer an unjust detriment in that amount. Further, Defendants' conduct and affirmative acts as alleged herein in relation to the failure to pay the amount outstanding during the time Defendants have had possession and use of Cartouche, Defendants have been unjustly enriched in an amount in excess of ninety thousand dollars ($90,000) and Plaintiff has suffered and continues to suffer an unjust detriment in that amount.

90.     Plaintiff is therefore entitled to an award of all monies equivalent to the value in dollars equal to Defendants' unjust enrichment, which is at least one hundred and eighty thousand dollars ($180,000) plus interest.

BUCHALTER
A PROFESSIONAL CORPORATION
PORTLAND

**COMPLAINT FOR DAMAGES**

## SIXTH CAUSE OF ACTION

### (PROMISSORY ESTOPPEL)

#### *Against all Defendants*

91.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 48 inclusive, as though fully set forth herein.

92.    Plaintiff alleges in the alternative to her breach of contract claim that Plaintiff is entitled to recover under the doctrine of promissory estoppel if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between Plaintiff and Defendants, or the existing contract is void, invalid, or unenforceable.

93.    On February 13, 2022, Defendant Summers made an unambiguous oral and written promise to Plaintiff.

94.    In or about early February 2022, Plaintiff and Defendant Summers reached an oral purchase agreement and mutual understanding that Defendants would purchase from Plaintiff, for the sum of two hundred thousand dollars ($200,000.00), Cartouche. The Parties further agreed that the two hundred thousand dollar ($200,000.00) purchase price would be payable in installments, due in full within sixty (60) days of the purchase agreement. In an effort to help facilitate Defendants' timely payment of Cartouche's purchase price, Plaintiff agreed to provide Defendants the opportunity to campaign and sell Benco on behalf of Plaintiff, and to apply fifty thousand dollars ($50,000.00) towards the purchase price of Cartouche, should Defendants be able to find a suitable buyer within a reasonable time.

95.    Defendants were in a position to fully perform, fulfill, and carry out the terms and conditions of the promise they made to Plaintiff.

96.    It was foreseeable that Defendants' promise would cause or induce Plaintiff to act in reasonable reliance on Defendants' promise.

97.    Plaintiff complied with all directives, instructions, and requests made to her by Defendants.

**COMPLAINT FOR DAMAGES**

BUCHALTER
A PROFESSIONAL CORPORATION
PORTLAND

98.   In reliance on Defendants' promise, Plaintiff gave Defendants' possession of Cartouche.

99.   As a result of Plaintiff's reliance, Plaintiff suffered a substantial change in position.

100.   Plaintiff did not sell Cartouche to another buyer and lost out on monies she would have received as a result of selling Cartouche to another buyer.

101.   Injustice can be avoided only by enforcement of the Defendants' promise.

102.   The unjust consequences of not enforcing Defendants' promise are that Plaintiff has sustained money damages.

103.   As a result, Defendants would be unjustly enriched.

## SEVENTH CAUSE OF ACTION

### (CONVERSION)

*Against all Defendants*

104.   Plaintiff incorporates by reference the allegations in Paragraphs 1 through 48 inclusive, as though fully set forth herein.

105.   At all times mentioned herein, Plaintiff, as the owner of Cartouche, has a right to possession.

106.   At all times mentioned herein, Defendants substantially interfered with Plaintiff's property, Cartouche, by knowingly taking possession of Cartouche and failing to make the final payment of ninety thousand dollars ($90,000.00).

107.   Plaintiff did not consent to Defendants taking possession of Cartouche without Defendants making the final installment payment of ninety thousand dollars ($90,000.00).

108.   Plaintiff has been harmed.

109.   Defendants' conduct was a substantial factor in causing Plaintiff's harm.

110.   Plaintiff is entitled to recover from Defendants the value of Cartouche at the time of conversion, plus interest from the date of conversion, or an amount

sufficient to indemnify Plaintiff for all loss naturally, reasonably and proximately resulting from the conversion, plus compensation for the time and money expended by Plaintiff in pursuit of said Cartouche, all according to proof at the time of trial or judgment.

111. The conduct of the Defendants was, and is, oppressive and malicious, in conscious disregard of the rights of Plaintiff herein, and in violation of the covenant of good faith and fair dealing implied in the purchase agreement. Plaintiff is therefore entitled to punitive damages against the Defendants in a sum according to proof.

112. As alleged above, in or around mid-January 2022, Defendants converted Cartouche. In doing the intentional acts alleged herein, Defendants acted despicably with oppression, fraud and malice, and with the intent to harm Plaintiff. In particular, Defendants acted with the intent to deprive Plaintiff of Cartouche, or the full value thereof, even though Defendants knew that the Parties had agreed that Defendants were to purchase Cartouche for two hundred thousand dollar ($200,000.00) and the purchase price would be payable to Plaintiff in installments, due in full within sixty (60) days of the purchase agreement. Defendants failed to make the third and final payment of ninety thousand dollars ($90,000.00) in breach of the purchase agreement. Plaintiff is therefore entitled to punitive damages in an amount to be proven at the time of trial in a sum sufficient to punish Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants and each of them as follows:

1.     For compensatory damages in an amount to be determined according to proof at trial but no less than one hundred and eighty thousand dollars ($180,000);

2.     For general damages, plus interest, according to proof at trial;

3.     For punitive and exemplary damages pursuant to Civil Code, section 3294;

1        4.      For restitution and disgorgement of all profits in an amount sufficient to

2    force Defendants to disgorge all ill-gotten gains;

3        5.      For pre-judgment interest at the legal rate from and after the date due

4    according to proof;

5        6.      For post-judgment interest at the legal rate from the date of judgment

6    until payment is collected;

7        7.      For punitive damages proximately caused by Defendants' fraudulent

8    and intentional conduct;

9        8.      For reasonable attorneys' fees and costs; and

10       9.      For such other and further relief as this Court may deem just and proper.

DATED:  December 5, 2023          BUCHALTER
                                 A Professional Corporation


                                 By:  _____/s/ Leah C. Lively_____
                                          LEAH C. LIVELY
                                       ALEXANDRA B. PAKZAD

                                      Attorneys for Plaintiff
                                         MISTI CASSAR

# Exhibit 1

BILL OF SALE

Misti Cassar
25933 Sand Canyon Road
Canyon Country , Ca 91387
805-405-5323


February 13, 2022


For: CARTOUCHE 93
FEI 106HO24

Price: 200,000.00 USD

Warranties:The seller warrants that the buyer has clear title to said horses upon receipt of purchase.

Buyer has paid for and obtained an insurance policy for  the full purchase price of 200,000.000.


Buyer will send a payment of 50,000.00 and pay the balance of 150,000.00  to seller within 60 days.

Buyer has agreed to put 50,000 of the Benco sale towards purchase price balance.

Buyer will purchase horses "as is" and the buyer assumes risk of loss immediately from February  2022 forward.

Seller promises to relinquish all passports, and papers immediately of purchase.

 At the time received and signed the said horse is owned in full by the buyer.

Buyer: Laina Summers
          9922 284th Ave NE
          Carnation, Wa 98014
laina@bayviewshowjumping.com
206-660-3490
Sellers signature:_____
 Date:_____

Buyers signature:_____
Date:_____

# Exhibit 2

BILL OF SALE

Misti Cassar
25933 Sand Canyon Road
Canyon Country , Ca 91387
805-405-5323


February 13, 2022


For: CARTOUCHE 93
FEI 106HO24

Price: 200,000.00 USD

Warranties:The seller warrants that the buyer has clear title to said horses upon receipt of purchase.

Buyer has paid for and obtained an insurance policy for the full purchase price of 200,000.000.

Seller will remain as loss payee for the sum owed until the horse is paid in full.

Buyer has agreed to purchase the horse in installments.


1. $50,000 paid Feb 2022
2. $50,000 from the sale of "Benco du Mesnildot
3. $100,00 broken into remaining payments


   Buyer will purchase horses "as is" and the buyer assumes risk of loss immediately
   from February 2022 forward.

Seller promises to relinquish all passports, and papers immediately of purchase.

At the time received and signed the said horse is owned in full by the buyer.

Buyer: Laina Summers
     1435 36th AVE, Seattle, WA 98122
laina@bayviewshowjumping.com
206-660-3490
Buyer signature:_____
Date:_____

DocuSign Envelope ID: D9E3E3C6-5D13-42DE-A9DE-03833B7B5D95

_
Seller signature:_____

Date:_____

_

VOID

# Exhibit 3

*Berkley Equine & Cattle*

Page 1 of 1
Financial Interest Copy

## DIRECT NOTICE OF CANCELLATION FOR NONPAYMENT OF PREMIUM

Date of Mailing: 07/10/2023

Insured:
Laina Summers
1435 36th Ave
Seattle, WA 98122-

For Questions or Changes Call:
The EMO Agency
400 Rosedale Ct
Warrenton, VA 20186-4328
(800) 347-3552

| Policy Number | Effective Date | Expiration Date | Policy Type | Cancel Date |
|---|---|---|---|---|
| QAM 4424303-12 | 03/29/2023 | 03/29/2024 | Animal Mortality | 08/22/2023 |

You are hereby given written notice of cancellation of Policy Number QAM 4424303-12 for nonpayment of premium.

You are hereby notified in accordance with the terms and conditions of the policy and in accordance with either state or federal law, that this policy will cancel on **08/22/2023, at 12:01 A.M. Standard Time.**

Any payment received after 08/22/2023, 12:01 A.M. Standard Time will not provide continuous uninterrupted coverage and will be returned to you or applied towards your account.

This Notice Mailed To:

Misti Cassar
25933 Sand Canyon Rd
Canyon Country, CA 91387-

NOIC 08 04